Good morning, judges. I would like to request to reserve three minutes of time, if that's okay. Okay, you may just keep an eye on the clock. So when it gets to three, you'll... Oh, right here. See it? Okay. I'm already 15. Okay. Good morning. Mark Ray is my name, and I am the attorney for Sierra Nevada Transportation, which is a licensed motor vehicle carrier based in California, which is licensed by the Federal Motor Carrier Safety Administration for pre-arranged ground transport from the airport to a final destination as the final leg of a continuous interstate trip in the stream of commerce. We are told by the respondent, Nevada Transportation Authority, that our federal license from the Motor Carrier Safety Administration is no good, and we need a state license in order to pick up people at the airport and deliver them to Lake Tahoe or their final destinations. Yellow Cab, and every case that has been decided since Yellow Cab, has followed the same analysis to say that the emphasis is on an intensely factual presentation, an analysis of the facts of each case as necessary. No one case decides another case. So we have to start off by questioning why we're here on a 12B6 motion to dismiss. I say that because a trial or cross motions for summary judgment would be how most of these cases are decided, but this one wasn't. Respectfully, we disagree with the district court that we have failed to state a claim, but remember, the claim is an intensely factual analysis of interstate commerce based on the facts of our particular case and not what happened in any other case. So this makes it a... Mr. Ray, could I ask you to focus on the aspect of your claim that involves the application of this state regulatory scheme to the transportation of airline crews? Because I understand that maybe poses a different issue from transportation of other people. And my question is, the state has said, or the state agency said, that it does not and would not exercise jurisdiction over an air crew connecting to and from the airport in the performance of their work duties. That was in their response to their motion, to your motion to dismiss. So if that's sort of the authoritative statement of what the state's policy is, what basis is there for believing that you will be subjected to enforcement action in the future if they've disclaimed authority to enforce the statute against that aspect of your business? Thank you. You're Judge Miller or Judge Koh? I am Judge Miller. Thank you very much. Okay. So the answer is that there's no reason for us to be arguing over whether it's a pilot or a passenger on the same plane in interstate commerce. I understand the nature of your question is, if the state says that we're not going to prosecute or cite you for transporting flight crews, what's your problem? Because you transport flight crews. Well, the answer to that, of course, as you know from the facts of the case, is they did cite us for transporting a flight crew. Now, you may say, well, they say it's not their policy. So it's kind of like they're denying the allegation of our complaint, aren't they? Well, since you're asking me, I'll say no, I don't think that's what they're doing. I think or I mean, it isn't one way to interpret this. It is your burden to show in order to establish standing. You have to show a reasonable likelihood that this policy is going to be enforced against you in the future. And regardless of what happened in the past, they've said they're not going to enforce this against you. So it seems like either, you know, either they're lying about that or you don't face a prospect of future injury. May I remind the court, respectfully, all of you, what happened here in this case and why we're here in the first place. The policy, if you will, that they said they weren't going to enforce before was they weren't going to cite us for picking up passengers from the airport under prearrangements and so forth and so on. They weren't going to do that. And of course, what you know is from the facts, they changed that policy. They changed it to say in an email, which you see in the brief, they said, yeah, we're not going to do that anymore. So today, Mr. Zilka or the NTA may say to you, oh, yeah, we're not going to do that. Why would you believe them? Is that what they did before? Whenever they want to change their policy, they change their policy. They could say they're not going to enforce it, but they will enforce it. But I'm looking at the policy that's on ER 52 of your complaint, and there's nothing in here that exempts airline crews, correct? There's nothing what? There's nothing in the policy as stated in your complaint that exempts airline crews from enforcement of the policy. That's right. When we filed the complaint, there was nothing. That's right. When we filed the complaint, that's correct. And there's nothing that says, well, we won't enforce it if the airline crew is in uniform. So we know that their airline crew, right? There's nothing like that. No, no, no. What about the statement in the motion to dismiss that says we do not and would not exercise jurisdiction over an air crew? Isn't that an authoritative statement by the agency of what its policy is? I have appeared before this agency, and I know what they say, and I know what they do. Two different things. Celebrity limo just got cited for taking an airline crew to Fallon. These are the facts that would come out. And if we had a trial, there's nothing wrong with giving us a trial. Is that fact that you just mentioned, is that in your complaint? No, because it happened between the time that we've. No, no, it is not. But let me ask you a question. Even if it's a stated policy of an agency that they would not enforce a policy against an airline crew, it all hinges on whether that crew is uniformed such that the agency would know that they're actually airline crew and thus not subject to the policy, wouldn't it? You know, you would think that. But remember what happened in the case. We transported a flight crew that happened to be deadheading, so therefore it wasn't in uniform. Got to the hotel, the cars impounded, were cited. Why? Because they say, well, you're just transporting these people. We go to the hearing, we say, these were pilots, flight crews. They go, okay, here's a $1,000 fine anyway. They fined us anyway. They fined us anyway, regardless of what they say their policy is. This is the facts of our case. All I'm asking for is let the facts be developed as they are in every other case of this nature that ever has been decided, including Mateo or any other case you want to cite. They're all the same. Here we are being stopped at the gate before we can even put our facts before the court. So we're asking factual questions here today. And I'm suggesting to you that the facts as stated in the complaint are supposed to be believed. The state is denying the facts in our complaint. And the district court said that was okay for them to deny the facts in our complaint that they cited us for transporting pilots. Can I ask you another question? Are you alleging a discrimination against out-of-state companies claim? And if so, do you have standing to bring that because you are the Sierra Nevada Transportation Incorporated? So you are a Nevada corporation. If the facts were to be known, we believe there's a reason why the NTA picks certain people to cite. But those facts are not before the court. They're not in our complaint, and we're not alleging discrimination per se. Are you alleging any other form of discrimination other than per se discrimination? No, no. I mean, we're not saying that in the pleading as the nature of our claim. We're simply saying that we were cited for reasons that are within the discretion, perhaps we could say, of the investigating officers who cite and tow our cars. But we are not saying that this is a discrimination case in the pleading. I would simply ask that we look back at all the cases that have been decided since 1952 in this area after Yellow Cab, including Yellow Cab, but everything after it from the 40s, 50s, 60s, 70s, 80s. Every single one of them says the same thing. Please step back, look at the facts of the Now, we have set forth sufficient prima facie facts, not only for the pilots, but also for the passengers. Now, there are other cases that talk about circuit court cases about passengers. Mateo dealt with passengers. Did you notice in Mateo how the Mateo court noticed that there was a contract with the airlines to transport flight crews from Honolulu, from the airport to the city of Honolulu, and yet in Mateo, the court said, no, you know, that's not allowed, that that's not going to be within interstate commerce. So every case, you have to balance all these facts. I'm just asking for the opportunity to do so, which is nothing more than what anyone else has ever done in this area. Mr. Ray, did you ask the district court for another opportunity to amend the complaint? Yes. In our opposition to the motion to dismiss, we did ask for an opportunity to amend to state the names individually of the board members under the 1983 claim. Yes, we did. To add them as defendants. And what, I mean, are there additional, on the question of whether you face a threat of future enforcement against air crews, are there additional facts that you might add to the complaint? I mean, you mentioned this incident in Fallon. Can you elaborate on what more would you say? Sure. As a routine matter, my clients, Priscilla and Roger, they will call me and say, guess what happened this week? Or guess what happened to so-and-so? Guess what happened to Ed Lobbencloss? Or guess what happened to Celebrity Limo? I know all about what's happening all the time down at the airport. And what is that? Well, who's getting cited and what they're getting cited for. And are they getting, are air crews who are known to be air crews getting cited? Yeah, I just, yes. And you would add that to the complaint if given the opportunity to amend? I don't know because I'll tell you what I know. I hear from my client who heard from someone else, Irving Snell's, Celebrity took an air crew out to Fallon. They got cited. Their car got impounded. That's what I know. So I did not spend the time to answer your question, Judge Miller. I did not spend the time to investigate that case for my client, but I'm hoping that I will have the opportunity to do so and to present these facts to Judge Hicks. I think he deserves to know these facts. And particularly because Judge Hicks has said, well, they say this is their policy. And I know from personal experience, from the time I appeared in front of the NTA, that their policies change whatever they want it to change. So why are we relying upon that? Shouldn't we rely on the law? What does the current version of the policy say as to airline crews? What they said in their brief is that they would never, under any circumstances, cite anyone for transporting an airline crew. That's not correct. So I don't know what their policy is. Nobody does. And that's part of the reason why it's so intimidating to have your client in the car, the client is left stranded, the car is impounded, we're cited, we have to ransom our car out of Hawk, and we have to pay a fine because of circumstances we can't necessarily anticipate. This is one of the problems I'm trying to... Can I reserve the last three minutes? You may. Or do you want me to just keep going? No, you may. I appreciate that so much. Mr. Soka? Good morning, judges of the Ninth Circuit. Luis Soka, Senior Deputy Attorney General on behalf of the Nevada Transportation Authority. What I would start out with instead of getting into the airline crew business is that if this court adopts the specific legal interpretation that appellant seeks, no federal agency and no state agency will have jurisdiction to regulate passenger transportation safety within 25 miles of any airport in the Ninth Circuit. First, in adopting appellant's view, this court would have to rule that the state regulatory agency, here, the NTA, sitting in its home state, cannot regulate ground transportation in its home state when it is connected to interstate air travel. Second, pursuant to 49 U.S.C. 13506, the federal government already cannot regulate ground transportation when it is incidental to such air travel within a 25-mile radius from the airport. Therefore, if you adopt appellant's interpretation of the law, no federal and no state agency will have jurisdiction to regulate passenger transportation safety within 25 miles of any airport in the Ninth Circuit. Accordingly, under this new interpretation that appellant urges in his brief, there will be... Mr. Soka, I'm sorry to interrupt you, but may we focus on the airline crews? Yes. Okay. So, you know, this is motion to dismiss, so we have to take the allegations in the complaint as true. And in this complaint, they allege that the policy of your agency does not have an exemption for airline crews. It does not have an exemption for airline crews, whether they're in or out of uniform. That's paragraph 24. And then on paragraph 20, or I'm sorry, 32, they allege that an airline crew was fined. So tell me why on a motion to dismiss, a district court, I'm looking at the district court's opinion where it references the paragraph about the airline crew being cited and says, this is on ER 141, line 23 to 26. However, that assertion, while true for the purposes of this order on the motion to dismiss, ultimately demonstrates the NTA's intent to not enforce its laws against trips clearly shown to involve airline crews. Accordingly, the court finds that aspect of S&T's business is not implicated for the purposes of this matter. I guess I'm not clear on how on a motion to dismiss, you would not accept the allegations in the complaint as true, or you would say, well, they are true for purposes of this order, but I'm going to disregard it anyway, based on something that was represented to me in the briefing in the motion to dismiss. That's a great question, Judge Kovacs. What I would reply with is, if you look at the appellant's first amended complaint, in the amended complaint, appellant itself states that the NTA enforced the law because the individuals were not in uniform. That implies, I mean, the only thing that could imply is that the NTA would not have enforced the law if the pilots were in uniform, if they knew that these were, in fact, pilots. So the appellant's own complaint gives away the game. That is that they're building this cathedral out of nothing, because, in fact, the NTA was a party to a case called... Can I ask you something, though? I was reading from the first amended complaint when I referenced paragraph 24 and paragraph 32. So those were the complaint that, the operative complaint that you just suggested I look at. I don't see anything in paragraph 24 which lays out what the policy is exempting flight crews in uniform. Right. Policy itself is not cited. But what is cited in the amended complaint is that the NTA enforced the law because the pilots were not in uniform. The pilots were not in uniform. In other words, there was no way for the NTA to know that these were, in fact, pilots. Can you tell us what is your understanding of the NTA policy? So what is your understanding of the NTA policy with respect to flight crews? So the NTA's policy with respect to flight crews is they would not impound a vehicle if flight crews are being transported to and from an airport. And is that whether, I mean, do they have to be in uniform? If they're not in uniform, but they have some sort of ID to demonstrate that they are, in fact, flight crews, what happens then? They would not enforce the law if they have, if there's any indicia that indicates to the NTA that these are, in fact, pilots, they would not enforce the law. And the reason I'm saying this is not just because we're arguing about facts. The NTA was a party to the Brown crew car case. That's a Ninth Circuit case. It's in our brief. And in that case, that involved a railroad crew. Very, very similar because it involves interstate passenger transportation. So for the same reasons that the Brown crew car decision to which the NTA was a party told the NTA they cannot enforce against employees of a federal carrier involving a federal contract when they're carrying out federal transportation objectives. For those same reasons, it's ludicrous for a pilot to suggest that the NTA would ignore the law as told, as dictated by the Ninth Circuit. I'm sorry. But what's the case law support to say that it is interstate commerce if the airline crew is in uniform, but it's not interstate commerce if the airline crew is not in uniform? What, cite me a case that says that that is the appropriate dispositive factor for whether it's interstate commerce or not? It doesn't just come down to uniform. If there's any indicia that the individuals are federal employees of a federal carrier, i.e., airline crew, whether it's the uniform, whether they have an ID that says they're pilots, whether there's other credible evidence to suggest that they're pilots, there is no way, no how the NTA would ever enforce its law against pilots in those circumstances. I was at the NTA enforcing these laws for six years. We have never once enforced the law against pilots where there was any evidence that these were pilots. And you haven't attempted to defend the application of the policy to pilots, right? So I guess if we were to think that the policy was being applied to pilots, then the plaintiff should get an injunction against that, in your view, right? Absolutely. And in fact, if there's any reason that the NTA made a mistake relative to pilots, there's a very easy route for the appellant to seek remedy, which would be a petition for judicial review before a district court, where the law is already clear in the Ninth Circuit. There is no way that the NTA, consistently with the law, can enforce this law against pilots. The NTA would be slapped down every single time by the Nevada Supreme Court. So I don't think this is appropriate for a motion to dismiss, but I'm going to ask you just because I'm curious, for the incident that is alleged in the first amended complaint where Mr. Ray asserts that the subject of the fine informed the agency that they were in fact flight crew, but they got the fine anyway. Can you explain what happened in that instance? Because that seems inconsistent with the policy you've articulated. Again, there was no, I don't recall the facts of the case. This happened a few years ago, and I'm not even sure if I was the one that prosecuted it, but what I can tell you is if any of the pilots showed up and they told us that they were in fact work for the airlines, there's no way that the NTA would enforce this policy against the airlines or their crew. And in fact, you know, so what I'm returning back relative to the uniform issue with the first amended complaint is that implies that if the NTA was put on notice that these are pilots, it would not enforce the law. Well, I guess I'm just wondering if perhaps there might be inconsistency within the NTA as to how it enforces its own policy, because at least as alleged in the first amended complaint, the NTA's communication to companies says any land transportation which begins in Nevada and terminates at another location in Nevada will be considered intrastate transportation, and it just doesn't have any exemption for flight crews here. So I'm just wondering if perhaps there might be somebody within your agency who's looking at the literal policy and maybe not knowing that there's an exemption for airline crews. Yeah, I was not involved in the drafting of that letter. But what I can tell you that the letter states what the black letter law is for, has been for the Ninth Circuit, which is that the NTA enforces NRS Chapter 706 as enacted by the Nevada legislature. The Nevada Supreme Court has said that it can correctly enforce that law. And when you look at the federal congressional scheme, 49 U.S.C. 14501 says that the limitation of state entities enforcing intrastate transportation is only when the ground transportation, either the end point, the beginning point, or the intermediary point is within outside the boundaries of the state. None of that applies here in the complaint, because the entire ground transportation that they complain about is within the boundaries of the state. Then you look at 13506, which is 49 U.S.C. 13506, which says that transportation of passengers by motor carrier incidental to transportation by aircraft is outside the federal regulatory jurisdiction. So in effect, what the appellant is arguing for is a Wild West scenario. They're saying, well, 13506, the federal government cannot regulate it. Guess what? NTA cannot regulate it either. So now we get to do what we want to do. That's completely incongruent position, because there will be no one to ensure that the drivers that pick up passengers at the airport have been drug tested or that such drivers have been criminally backgrounded. Additionally, there will be no one to ensure that the vehicles that pick up passengers at the airport have been inspected for safety or that such vehicles are properly insured in case of an accident. And so the whole legal scheme that the appellant urges here would be contrary to the safety objectives as embodied in the state and federal statutes and regulations and case law. And again, relative to the airline crew issue, that's a red herring, because its own amended complaint acknowledges that there was no way for the NTA to be unnoticed because the crew line was not in uniform. And I can tell you, as the DAG assigned to that agency in the past for the past six years, never once we have impounded an airline crew when we knew we were dealing with an impound crew. That's all I have. I would like to reserve the remainder of my time for rebuttal. Thank you. You won't get a rebuttal. So if you have more to say, you should say it now. I would like to ask if you have any other questions, Your Honors. Looks like we don't. So thank you. With that, we are. Thank you. Mr. Wray. It's difficult for me to argue in the traditional 12B6 way because there's so much going on about the facts that are not in the complaint and even testimony from Mr. Zoka here this morning about what's going on. I just would like to reemphasize the point that I was making earlier about that point. Next, I mean, the point being, of course, we're on a 12B6 here. Did we state a claim that's cognizable under Iqbal and Twombly? Yes, we did. What's happening here is we're looking beyond that to see how we can avoid a trial or summary cross motions for summary judgment based on determinations of facts that are being denied. I mean, what Mr. Zoka has just done is said, well, we deny that. Well, if every defendant can do that in every case, it's a wonderful day for defendants. But it's not what a 12B6 is for. It says, I heard him say, no way, no how, if you are a pilot, will the carrier, the Now, please give us the opportunity to prove that wrong. I cannot augment the record. I don't want to augment the record. But please give us the opportunity to go to court and prove that that's not the case, that it has happened even since this briefing. Mr. Ray, let's assume that this matter proceeded to the summary judgment stage or to a trial. Are the facts that you contend would be discovered and presented in connection with those proceedings related to the issue of whether or not we have interstate commerce here? Is that what essentially what the trial would be about? Yeah, because there's disputed facts, obviously. But the subject would be whether or not there's interstate commerce, right? That's the subject of the case. Right. Yes, it is. Exactly. And hasn't this court affirmed the principle that states may impose safety-related licensing requirements on those engaged in interstate commerce? Absolutely. In one of the cases, I couldn't find it when he was talking, but absolutely correct. Okay. I think it's the Clean Well Biohazard Waste and General Ecology Consultants, Inc. v. Nelson case. But isn't the Nevada regulatory scheme here essentially grounded in safety? It does not affect interstate commerce. But yes, true. By the way, so does the Federal Motor Carrier Safety Administration. There are regulations that adopt safety. By the way, the Fair Labor Standards Act— Here's my point. Assuming we've got interstate commerce, can't Nevada still regulate your client? On safety issues, on Fair Labor Standards Act issues, on other things other than their ability to have a license to pick up passengers, yes. And by the way, it's mentioned in other cases because it's not the first time this has come up. What is the extent of regulation for things that has nothing to do with your ability to go to the airport and pick up a passenger? That has been—and I'm sorry I can't grab the case for you right this second, but absolutely. Fair Labor Standards Act, Judge Christensen, it does apply to within 25 miles of an airport. So the 25-mile radius thing is not a bugaboo. Oh, well, that means, as he said, nobody can regulate anyone within 25 miles of an airport. How is that true? That's not true at all. Of course you can. There are state laws on vehicles, all kinds of state laws. But it doesn't interfere with the ability to do interstate commerce. You have to drive a car with four wheels. It has to be able to pass inspections, all of that. But that's not to say that you need a license from the state to pick up someone from the airport. And that's what all the cases are talking about. So I believe, I believe that it is incorrect to try and sway the court by saying, if you do this, you're going to destroy our ability to regulate. No, we're not. Okay. Any further questions? No. No, thank you. Thank you very much. We thank both counsel for the arguments this morning and the case was submitted. Thank you for your hospitality. It's a beautiful courtroom. Thank you.
judges: MILLER, KOH, Christensen